# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANNIE LUCILE LIVINGSTON,

       *Plaintiff,*

  vs.

SODEXO, INC. [SIC] AND AFFILIATED
CO.,

       *Defendant.*

Case No. 11-4162-EFM

## MEMORANDUM AND ORDER

This case arises out of pro se Plaintiff Annie Livingston's employment termination. Plaintiff claims that she was unlawfully terminated by Defendant on the basis of her race, gender, and age. Plaintiff also alleges that Defendant discriminated against her on the basis of her race and gender by failing to promote her to general manager. Finally, Plaintiff claims that Defendant retaliated against her because she complained about race-based comments. The matter is now before the Court on Defendant's Motion for Summary Judgment. Because the Court concludes that no genuine issues of fact exist as to whether Defendant discriminated or retaliated against Plaintiff, the Court grants Defendant's motion.

# I.    Factual and Procedural Background[1]

### *Local Rules for Summary Judgment*

The required rules for summary judgment motions in the District of Kansas are set forth in D. Kan. Rule 56.1.   Under that rule, "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[2]  D. Kan. Rule 56.1(b) addresses a party's responsibility in opposing a motion for summary judgment.

> (1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

Plaintiff is pro se, and the Court must afford her some leniency in her filings.[3]  A pro se litigant, however, is still expected to "follow the same rules of procedure that govern other litigants."[4]  In this case, Plaintiff failed to controvert any of Defendant's facts because she did

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

[2] D. Kan. Rule 56.1(a).

[3] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[4] *Id.*

not respond to Defendant's factual statement.[5]   In Plaintiff's opposing memorandum, she also failed to appropriately set forth her additional facts.   Plaintiff did not provide a factual statement or support for any of her factual assertions throughout her brief.   Furthermore, the evidence that Plaintiff cited to did not support her factual contention or it was inadmissible because Plaintiff failed to authenticate by affidavit or deposition testimony any of the fifty-five exhibits attached to her response.[6]   Nonetheless, the Court recognizes that Plaintiff is pro se, and attempts to construe Plaintiff's briefing generously in her favor.

### *Facts*

Plaintiff Annie Livingston was born in September 1962.   Defendant Sodexo[7] first hired Plaintiff Annie Livingston on August 23, 2004.    Plaintiff worked in several different positions for the company from August 2004 through October 2007.   In October 2007, she applied for and received a General Manager position working at client Brookings Health System.   Plaintiff's District Manager, Cathy McLaughlin, counseled Plaintiff on several occasions in 2008 for poor performance.   In January 2009, Defendant removed Plaintiff from the General Manager position at Brookings due to her prior documented performance deficiencies.   Plaintiff continued to work

---

[5] The Court notes that approximately a month after Defendant filed its reply, Plaintiff filed a Motion for Leave to File Surreply in which she sought to file a surreply addressing Defendant's factual statement.   The Court denied Plaintiff's request.   Although the Court denied Plaintiff's request, the Court briefly reviewed Plaintiff's proposed surreply.   Even in Plaintiff's surreply, she failed to appropriately controvert Defendant's facts because she either failed to cite to evidence that supported her contention or failed to provide evidence to support her contention.

[6] *See Keeler v. Aramark*, 418 F. App'x 787, 791 (10th Cir. 2011) (citing *Kay*, 500 F.3d at 1218) (stating that, although courts must afford pro se litigants leniency, "they have no obligation to advise such a litigant of the authentication requirement, for even pro se litigants are expected to 'follow the same rules of procedure that govern other litigants' ").

[7] Sodexo, Inc., is named as the Defendant in the Complaint.   Defendant states that Plaintiff's employer was SDH Services West, LLC, and that Sodexo was improperly identified as Plaintiff's employer.   Nevertheless, Defendant responds to the motion, and the Court will simply refer to Plaintiff's employer as Defendant or "company."

for Defendant as a Resource Manager. In this position, Plaintiff was responsible for supporting various accounts with project work and staff vacancies.

After Plaintiff served as a Resource Manager assigned to client Ft. Riley, Plaintiff applied for and was hired on June 9, 2009, as an Operations Manager for the MEDCOM Division in Ft. Riley, Kansas. Plaintiff applied, or "posted," for the permanent Operations Manager position at Ft. Riley, pursuant to Defendant's policy requiring that all interested candidates "post" for an open, permanent position to be considered for that position. Plaintiff understood that Defendant's policy requires all employees to "post" for open, permanent positions with Defendant.

Gary O'Neill, Area Operations Manager, in consultation with District Manager Andy Whisnant, made the recommendation and decision to hire Plaintiff as the Operations Manager at Ft. Riley. O'Neill and Whisnant remained in their respective positions throughout Plaintiff's employment while she worked at Ft. Riley. Plaintiff's direct supervisor at Ft. Riley from June 2009 to June 2010 was Tom Beesting. From June 2010 through August 2010, Joe Kilishek was Plaintiff's direct supervisor. At the time of Plaintiff's employment, the Ft. Riley facility also employed Teri Brown as a Food Service Manager.

Defendant's MEDCOM contract with the Army includes Defendant providing food and hospitality-related services to various Army medical centers throughout the country. Defendant assumed the responsibility for managing food and hospitality services at the Ft. Riley Army hospital under the MEDCOM contract in January 2009. The MEDCOM contract, also informally known as a Performance Work Statement ("PWS"), contains various provisions allowing the Army to, among other things, monitor Defendant and its services to assure that Defendant is meeting various food, safety, and other internal and external standards. A provision

of the PWS provides that a Designated Government Representative of the Army may periodically conduct QA inspections to monitor, among other things, Defendant's compliance with food and safety related standards.

Bob Honeychurch was the Army's Designated Government Representative during the relevant time period. Generally, Honeychurch did not inform Defendant when he was conducting QA inspections and would arrive unannounced. When Honeychurch conducted QA inspections at Ft. Riley, he would issue written reports to Defendant concerning how many deficiencies he identified. The standards for the QA inspection included standards outlined in the PWS, standards by outside food and safety inspectors, and the Government's own food and safety standards. The goal of the QA inspections was, in part, to ensure that Defendant was keeping and maintaining the Army's food facilities in such a way to provide safe food service so the facilities would pass any unanticipated outside food and safety audits.

It was the on-duty Manager's responsibility to, among other things, ensure that any deficiencies identified by Honeychurch during the QA inspection were promptly addressed to Honeychurch's satisfaction. If Defendant failed to respond adequately to the QA inspection at Ft. Riley, the poor performance could potentially place the entire MEDCOM contract in jeopardy.

Plaintiff's job responsibilities as an Operations Manager at Ft. Riley included, but were not limited to, ensuring that the overall food services operations ran smoothly, met all relevant food safety standards, and passed all internal and external audits—including the Army's QA audits performed by Honeychurch.

During her first month as permanent Operations Manager at Ft. Riley, Plaintiff's direct supervisor, Beesting, issued her Constructive Counseling Notices on July 8 and July 14, 2009.

These Notices were issued because Plaintiff failed to (1) ensure a counseling session was conducted in a private setting, (2) confer with her manager regarding a decision to suspend an employee, (3) consistently apply policies to all employees, and (4) ensure that the work area was cleaned.

On August 10, 2009, Beesting counseled Plaintiff again because she failed to ensure that the food temperature logs were completed, that expired food was discarded, that a cashier was present at the start of customer service, and that kitchen equipment was turned off at the end of food service.

On December 24, 2009, Beesting issued Plaintiff a Final Written Warning for several more violations. Specifically, the Warning states that Plaintiff failed to prepare and post work schedules in advance as discussed on multiple occasions, left the entrances unlocked, left a steam kettle on overnight, and failed to inform Beesting of her absence from work.

While this Final Written Warning was in effect, in March or April 2010, Defendant received several complaints from hourly employees through its Ethics and Compliance Hotline alleging that Plaintiff had engaged in inappropriate behavior, including mistreating employees, wrongfully accusing an individual of theft, yelling at employees, and other inappropriate behavior. Area Operations Manager O'Neill, District Manager Whisnant, and Keivin Kilgore in Human Resources began an investigation into these allegations.

During this same time period and investigation, Defendant received complaints from employees, including Plaintiff, about Beesting's behavior. On April 27, 2010, Plaintiff complained to Kilgore that Beesting had made inappropriate racial comments to other employees. Plaintiff did not allege that Beesting had discriminated against her, but she complained that he made racially offensive comments to several other employees.

O'Neill's and Whisnant's investigation into the employee complaints against Beesting revealed that Beesting had violated several company policies, including behaving inappropriately toward subordinate employees. As a result of Defendant's investigation and findings, they terminated Beesting's employment effective June 22, 2010.

During this same investigation, Defendant also found that Plaintiff had engaged in inappropriate and unsatisfactory behavior as Operations Manager. On June 22, Whisnant met with Plaintiff, and explained the outcome of Defendant's investigation. Whisnant issued her a second Final Written Warning and explained that any further unsatisfactory performance would result in termination.

The second Final Written Warning noted that Plaintiff had been involved in incidents of disrespect to employees and company policy violations. Specifically, the Warning noted that Plaintiff had (1) repeatedly yelled and disciplined employees in front of customers, (2) unfairly targeted employees for disciplinary action, (3) disproportionately assigned job duties, (4) falsely accused a customer and employee of stealing food, (5) spoke with employees in a disrespectful and degrading manner, and (6) violated the US Army Cash Handling Policy by providing a subordinate employee with the combination of Defendant's safe when Plaintiff reported late to work. The Warning noted that "[t]his document is notification that any further occurrences or employee relations issues will result in termination of employment."

O'Neill and Whisnant selected Joe Kilishek as the interim General Manager immediately after Beesting's departure. They selected him for the position based upon Kilishek's background as a food services manager for other Defendant's accounts and based upon his background and track record of success in prior managerial positions with Defendant. Specifically, Kilishek had (1) spent over 20 years in the US Army in a food service role, (2) successfully managed units

larger than at Ft. Riley, and (3) been part of the initial MEDCOM startup team in 2008 responsible for providing overall training to the unit's General Managers.

Plaintiff did not ask to be considered for the interim General Manager position. O'Neill and Whisnant did not know that Plaintiff was interested in the position. But due to Plaintiff's numerous performance issues as Operations Manager, they would not have believed that she was qualified for the interim General Manager position.

On July 6, 2010, Kilishek, as interim General Manager, met with Plaintiff and Brown, the Food Service Manager, to articulate performance expectations to both of them. On July 19, 2010, Plaintiff had an email exchange with Brown, in which Plaintiff stated that Plaintiff could have been fired along with Beesting, and noted that Defendant had given her and Brown a second chance. Plaintiff also stated in this email that her performance as Operations Manager needed to improve or she could be terminated. On July 20, Kilishek held a follow-up meeting with Plaintiff and Brown, and he emphasized the need to ensure compliance with all food, health, and safety requirements.

In early August 2010, the permanent General Manager position at Ft. Riley was posted according to company policy. The job responsibilities of the position included, but were not limited to: (1) directing all contact service operations, (2) planning and supervising special functions, (3) maintaining cash control and payroll records, (4) hiring and training personnel, and (5) maintaining customer satisfaction and good public relations. Approximately twenty-four people applied for the position. Plaintiff did not "post" or otherwise apply for the position. Defendant interviewed candidates for the permanent General Manager position, and O'Neill and Whisnant ultimately chose Kilishek for the position. As discussed above with regard to Kilishek's qualifications for the interim General Manager position, O'Neill and Whisnant chose

Kilishek because of his previous experience. In addition, a third-party recruiter conducted internal reference checks, and there were no negative performance indicators for Kilishek.

On August 19, 2010, Honeychurch notified Kilishek of a possible QA inspection to occur the next morning on August 20, 2010. Plaintiff was the closing manager on August 19, and she was scheduled as the opening manager on August 20. Kilishek contacted Plaintiff and told her to prepare for Honeychurch's inspection in the early morning hours of August 20 and to perform the actions necessary to ensure compliance. Plaintiff acknowledged her responsibilities and told Kilishek that she would be ready for Honeychurch.

Honeychurch arrived on the morning of August 20 and conducted the inspection. Plaintiff was not present. Honeychurch's inspection found nineteen deficiencies.

Based upon the inspection results, and in light of Plaintiff's advance warning of the impending inspection, Kilishek believed that Plaintiff disobeyed his specific directions and failed to perform her job duties without excuse. Kilishek met with Plaintiff on August 24, 2010, to discuss the inspection deficiencies, and Plaintiff indicated that she did not take the inspection seriously.

Because of Plaintiff's two Final Written Warnings and her failure to act upon advance notice of an inspection or take responsibility for her actions, O'Neill, Whisnant, and Kilishek, in consultation with Human Resources, agreed that Plaintiff failed to meet performance expectations and that her employment should be terminated. Defendant terminated Plaintiff's employment on August 31, 2010. On this date, Kilishek met with Plaintiff to inform her of her termination. During this meeting, Kilgore from Human Resources was present by telephone.

O'Neill, Whisnant, and Kilishek did not make any racial or other derogatory comments to Plaintiff during her employment. Defendant hired Corey Jenkins, a forty-two year old African-

American male, as Operations Manager to fill the vacancy created by Plaintiff's employment termination.

Plaintiff filed a Charge of Discrimination with the Kansas Human Rights Commission ("KHRC") on November 9, 2010. Plaintiff filed her Complaint with the Court on November 14, 2011. She alleges that Defendant discriminated against her on the basis of her race and gender by failing to promote her to General Manager. She also alleges that Defendant discriminated against her on the basis of her race, age, and gender by terminating her employment. Finally, Plaintiff claims that Defendant retaliated against her by terminating her employment because she complained about race-based comments. Defendant seeks summary judgment on all claims.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[10] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary

---

[8] Fed. R. Civ. P. 56(c).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

judgment.[12]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]


### III.     Analysis

#### A.  *Plaintiff's Failure to Promote Claim*

##### 1.    *Plaintiff cannot establish a prima facie failure to promote claim.*

Plaintiff contends that Defendant discriminated against her on the basis of her race and gender by failing to promote her to General Manager.  To establish a prima facie case for failure to promote, a plaintiff must show that "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled by someone outside the protected class."[14]

Plaintiff appears to allege that she was discriminated against when Defendant did not appoint her to the interim General Manager position or the permanent General Manager position at Ft. Riley. Although it does not appear that Defendant posted the interim General Manager position,[15] the evidence demonstrates that the relevant decision-makers, O'Neill and Whisnant, were not aware of Plaintiff's interest in the position.  Thus, there is no evidence that she "applied" for the position.

---

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005).

[15] Plaintiff provides no evidence that Defendant's policy required it to "post" the interim General Manager position.

Furthermore, Plaintiff was not qualified for this position. Plaintiff contends that she was uniquely qualified for the position and provides evidence of her Bachelor's Degree in Dietetics and her Masters of Science Degree in General Management. She also claims that she was qualified for the position due to her previous positions with Defendant. But the uncontroverted evidence shows that Defendant removed Plaintiff in January 2009 from her previous position as a General Manager at Brookings due to documented performance deficiencies. In addition, at the time Defendant filled the interim General Manager position at Ft. Riley, Plaintiff had just been placed on her Second Final Warning because of performance-related deficiencies as Operations Manager at Ft. Riley, a position with less responsibilities than that of interim General Manager. Plaintiff cannot establish that she was meeting the expectations of her current job and thus cannot demonstrate that she was qualified for the increased responsibilities of the interim General Manager position. Because Plaintiff cannot establish that Defendant was aware she sought the interim General Manager position nor demonstrate that she was qualified for this position, she cannot establish a prima facie case.

With respect to the permanent General Manager position, the evidence demonstrates that Defendant posted the General Manager position according to its company policy. The job responsibilities for the position included maintaining cash control and payroll records, hiring and training personnel, and maintaining customer satisfaction and good public relations. Twenty-four individuals applied for the position, and Plaintiff was not one of them. The relevant decision-makers, O'Neill and Whisnant, interviewed candidates and ultimately selected Kilishek (the interim General Manager) for the permanent position.

Although Plaintiff argues that the unadvertised interim General Manager position was the gateway to Kilishek's promotion to General Manager, it is uncontroverted that Defendant posted

the General Manager position, and numerous individuals applied for it. Furthermore, it is uncontroverted that Defendant interviewed several candidates for the position. Plaintiff simply did not apply for the position. And Defendant determined that Kilishek's qualifications were superior to the other applicants that actually applied for the position. In addition, for the reasons stated above, Plaintiff cannot demonstrate that she was qualified for the position had she applied for it. Thus, Plaintiff cannot establish a prima facie case of failure to promote.

2. *Even if Plaintiff could establish a prima facie failure to promote claim, Defendant articulates a legitimate, nondiscriminatory reason for its decision, and Plaintiff provides no evidence of pretext.*

If a plaintiff can establish a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action.[16] If a defendant meets this burden, the plaintiff must demonstrate that the defendant's reason is not the true reason for its decision, but is instead pretext for discrimination.[17] "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[18]

Even if Plaintiff could establish a prima facie case of discrimination, Defendant articulates the legitimate, nondiscriminatory reason that it did not promote Plaintiff to the interim General Manager position or the General Manager position because she never applied for the positions and thus it was not aware she sought the positions. In addition, Plaintiff was not

---

[16] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216-17 (10th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[17] *Id.* at 1217.

[18] *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) (citation omitted).

adequately performing her current job and was not qualified for the increased responsibilities of a General Manager position. Furthermore, Defendant provides evidence of Kilishek's superior qualifications for the position. Kilishek had over 20 years in the US Army in a food service role, had successfully managed units larger than at Ft. Riley, and had been part of the initial MEDCOM startup team in 2008 responsible for providing overall training to the unit's General Managers. Finally, a third party recruiter found no negative performance indicators for Kilishek.

Because Defendant articulates a legitimate reason, it is Plaintiff's burden to establish that there is a factual dispute over whether Defendant's asserted reason is pretext for discrimination on the basis of race and gender. Plaintiff simply speculates that Kilishek was a less qualified white male, and she was uniquely qualified for the position. Yet, Plaintiff does not provide any evidence that Kilishek lacked the necessary qualifications. And she only offers her own opinion that she was better qualified for the position. "It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance."[19] Furthermore, although Plaintiff contends that Defendant deviated substantially from its own government approved Affirmative Action plan in hiring Kilishek, she provides no evidence to support this argument. In contrast, Defendant provides evidence that it posted the General Manager position and Plaintiff did not apply for it.[20] In sum, Plaintiff cannot demonstrate that Defendant's asserted reason for failing to promote her was pretext for gender and race discrimination. Accordingly, the Court grants Defendant's motion for summary judgment on this claim.

---

[19] *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

[20] Plaintiff provides no evidence that Defendant's policy required it to post the interim General Manager position.

### B. *Plaintiff's Termination Claim*

Plaintiff contends that Defendant discriminated against her on the basis of her race, gender, and age when it terminated her employment.

1. *Plaintiff fails to establish a prima facie case of discrimination on the basis of her race, gender, or age regarding her termination.*

A prima facie case of race or gender discrimination generally requires a demonstration that plaintiff (1) is a member of a protected class; (2) was qualified and satisfactorily performing her job duties; and (3) was terminated under circumstances that give rise to an inference of discrimination.[21]   To establish a prima facie case of age discrimination under the Age Discrimination in Employment Act ("ADEA"), a plaintiff must demonstrate that she was "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age."[22]   Similar to race and gender discrimination cases, the formulation of a prima facie case of age discrimination is flexible and depends on the circumstances of the case.[23]

Plaintiff cannot establish a prima facie case of race, gender, or age discrimination because she cannot demonstrate that she was performing her job duties satisfactorily.   The evidence demonstrates that due to numerous performance issues, Plaintiff's supervisor placed her

---

[21] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (stating race discrimination elements); *Allen v. Sulzer Chemtech USA, Inc.*, 289 F. App'x 278, 282 (10th Cir. 2008) (stating that a prima facie case of gender discrimination requires that a plaintiff demonstrates that she "(1) belongs to a protected class, (2) was qualified for her position, (3) was terminated despite those qualifications, and (4) was terminated under circumstances that give rise to an inference of discrimination.").

[22] *Adamson v. Multi Cmty. Diversified Services, Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008).

[23] *See Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1191 n. 5 (10th Cir. 2010) (citing *Plotke v. White*, 405 F.3d 1092, 1099-1100 (10th Cir. 2005)).

on a Final Written Warning in December 2009.  While on this Final Written Warning, Defendant

received several calls about Plaintiff's inappropriate behavior toward other employees.  In

performing its investigation, Defendants substantiated these allegations, and placed Plaintiff on a

Second Final Written Warning in June 2010.  This Warning stated that Plaintiff would be

terminated for any further performance issues.  In August 2010, Plaintiff failed to adequately

prepare for a QA inspection, and the inspector found 19 deficiencies.  Plaintiff then failed to take

responsibility for her lack of action in preparing for the inspection.  Thus, Defendant determined

that Plaintiff should be terminated from her position.  Because Plaintiff cannot demonstrate that

she was performing her job duties satisfactorily, Plaintiff cannot establish a prima facie case of

discrimination on the basis of her race, gender, or age.

    *2. Even if Plaintiff could establish a prima facie case of race, gender, or age discrimination regarding her termination, Defendant articulates a legitimate, nondiscriminatory reason for its decision, and Plaintiff provides no evidence of pretext.*

      Even if Plaintiff could establish a prima facie case of discrimination, Defendant meets its

burden in articulating a nondiscriminatory reason for Plaintiff's termination.  Unsatisfactory job

performance is a legitimate, nondiscriminatory reason for termination.[24]  Thus, the burden shifts

back to Plaintiff to demonstrate that a factual dispute exists with regard to whether Defendant's

reason is pretext for discrimination on the basis of race, gender, and age.  Plaintiff cannot meet

her burden.

    *a. Race Pretext*

        *1. Plaintiff's comparators are not similarly situated.*

---

[24] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) ("Poor performance is a quintessentially legitimate and nondiscriminatory reason for termination.").

Plaintiff contends that Defendant's reason for termination is pretext for race discrimination because two white individuals, Beesting and Brown, were not terminated when they failed an inspection. The Court notes that Plaintiff did not authenticate the exhibits she provides as support for these factual contentions.[25] Nevertheless, even if the documents support Plaintiff's contention that these individuals failed an inspection, these individuals are not appropriate comparables because they are not similarly situated. "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.' "[26] Plaintiff provides no evidence that these two individuals dealt with the same supervisor.[27] Nor does Plaintiff demonstrate that these two individuals engaged in conduct of comparable seriousness. Plaintiff had numerous performance issues prior to failing the inspection. Indeed, Plaintiff had been placed on a Second Final Written Warning in which it states that "any further occurrences or employee relation issues will result in termination." Plaintiff fails to recognize that her termination was not only due to the inspection failure, but her response to that inspection failure, and was the culmination of numerous performance issues. Thus, Plaintiff fails to present evidence of a similarly situated employee.[28]

---

[25] The Court cannot verify whether several of the exhibits actually relate to Mr. Beesting.

[26] *EEOC v. PVNF, LLC*, 487 F.3d 790, 801 (10th Cir. 2007) (citation omitted).

[27] Beesting was Plaintiff's supervisor and thus could not have the same supervisor. The Court notes that Defendant did in fact terminate Beesting for other issues.

[28] Plaintiff also contends that Defendant's rate of pay and termination of another black female, Mattie Woods, is evidence of Defendant's discrimination toward African-Americans. The evidence that Plaintiff relies upon, however, is inadmissible. Furthermore, it is irrelevant to Plaintiff's claim. Finally, Defendant submits evidence with its reply that Defendant terminated Woods after she had been placed on a Written Warning. After Defendant placed Woods on this Written Warning, Woods continued to have performance issues and Defendant terminated her. Defendant's termination of another African-American female manager for performance issues does not indicate Defendant's discriminatory animus toward African-Americans.

## 2. *Falsity of Defendant's stated reason for termination*

Next, Plaintiff argues that Defendant's reason for termination is pretextual because Beesting, her supervisor from June 2009 through June 2010, issued some of Plaintiff's previous negative performance reviews, and he was terminated for inappropriate behavior.[29] She also contends that Beesting instructed hourly employees to call the business abuse hotline to raise their concerns about Plaintiff.[30] Thus, it appears that Plaintiff contends that her previous performance issues did not actually occur, and Defendant's reason for termination must be false.

It is uncontroverted that Defendant investigated Beesting and found that he violated several company policies, including behaving inappropriately toward subordinate employees. But Defendant provides uncontroverted evidence that, in performing its investigation into the complaints about Beesting, it also established that Plaintiff had engaged in inappropriate and unsatisfactory behavior as Operations Manager. Instead of terminating her employment, Defendant issued her a second Final Written Warning. Beesting played no part in Defendant's issuance of the second Final Written Warning. Instead, Plaintiff's District Manager, Whisnant, issued this Warning. Plaintiff even acknowledged in a July 2010 email that her job "could have justifiably been on the chopping block." In addition, Plaintiff engaged in additional inappropriate behavior in August—after Beesting was no longer her supervisor nor employed by Defendant.

---

[29] Plaintiff advances this argument with respect to her retaliation claim, but the Court will address it in the context of her termination claim, as well.

[30] The Court has construed this evidence generously in Plaintiff's favor. As noted previously, Plaintiff does not authenticate the exhibits she provides for support of her facts. And the document that she does provide as support for this fact does not specifically reference Plaintiff—but rather states, "Three employees who made hotline calls (03/02/10 and 03/22/10) stated that they were specifically told by you to contact the Sodexo Business Hotline when they brought concerns to you about other managers." *See* Doc. 109-50.

Furthermore, the relevant decisionmakers in Plaintiff's termination decision are O'Neill, Whisnant, and Kilishek. O'Neill and Whisnant made the decision to hire Plaintiff approximately one year earlier. The Tenth Circuit recognizes the "same actor inference" which provides that "in cases where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reasons for acting against the employee is not pretextual."[31] Plaintiff acknowledges that O'Neill and Whisnant never made any racially (or other) derogatory comments to her. Plaintiff provides no evidence that Kilishek, Plaintiff's supervisor at the time of her termination, made any racial, gender, or age-related comments to Plaintiff. Thus, Plaintiff provides insufficient evidence to raise a factual issue as to the falsity of Defendant's stated reason for her termination.

*b. Age Pretext*

Plaintiff summarily asserts that Defendant terminated her on the basis of her age because she was replaced with a younger less experienced employee earning significantly less. Plaintiff was forty-seven years old at the time of her termination. Her replacement was a forty-two-year-old African-American male. There is no bright line rule that a five-year age difference is insignificant, because not all five-year age differences are the same.[32] But the replacement of an individual who is in her mid-forties with an individual who is in his early forties is not so suspicious to warrant an inference that Defendant's reason for termination is pretext for age discrimination.[33]

---

[31] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (internal quotation marks and citation omitted). In *Antonio*, the timeframe between hiring and termination was approximately ten months. *Id.*

[32] *See Whittington v. Nordam Group Inc.*, 429 F.3d 986, 996 (10th Cir. 2005).

[33] The Court notes that this evidence may be sufficient to establish the fourth prong of a prima facie case of discriminatory termination on the basis of age, but it is insufficient to demonstrate pretext. Plaintiff failed to

In sum, Plaintiff does not point to evidence that would raise a genuine issue of fact as to whether Defendant's stated reason for her termination was pretext for race, gender, or age discrimination.[34] Accordingly, the Court grants Defendant summary judgment on Plaintiff's termination claims on the basis of her race, gender, and age.

### C. Plaintiff's Retaliation Claim

Plaintiff contends that Defendant retaliated against her by terminating her employment for complaining that her supervisor made racial comments to other employees.

#### 1. Plaintiff cannot establish a prima facie case of retaliation.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would find the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action.[35] "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.' "[36] "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to

---

establish a prima facie case of age discrimination because she failed to demonstrate that she was performing her duties satisfactorily.

[34] Plaintiff only addresses Defendant's alleged gender discrimination in the context of her failure to promote claim.

[35] *Conroy v. Vilsack*, 707 F.3d 1163, __, 2013 WL 491546, at *15 (10th Cir. Feb. 11, 2013).

[36] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Burrus v. United Tel. Co. of Kan, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

establish causation."[37]  "[A] three-month period, standing alone, is insufficient to establish causation."[38]

On April 27, 2010, Plaintiff complained that her supervisor, Beesting, had made racial comments about other employees.  Plaintiff was terminated from her position on August 31, 2010—more than four months after her complaint.  Standing alone, this evidence is insufficient to demonstrate a causal connection and a prima facie case of retaliation.  Thus, Plaintiff must provide additional evidence to establish causation, and she fails to do so.[39]  Accordingly, Plaintiff cannot establish a prima facie case of retaliation.

>    2.  *Even if Plaintiff could establish a prima facie case of retaliation, Defendant articulates a legitimate, nondiscriminatory reason for its decision, and Plaintiff provides no evidence of pretext.*

As noted above, Defendant meets its burden in articulating a legitimate, nondiscriminatory reason of terminating Plaintiff because she was not satisfactorily performing her duties.  Plaintiff does not present any probative pretext evidence.  The Court addressed

---

[37] *Id.*

[38] *Id.* (citing *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999)).

[39] The Court notes that Plaintiff asserts that during her termination meeting, Kilgore (an African-American male) in Human Resources, was present by telephone, and made the statement "We fired Tom because of you, now we are firing you."  Plaintiff fails to cite to the record for this proposition, and she does not provide a declaration or affidavit asserting that Mr. Kilgore made this statement.  Thus, Plaintiff relies on inadmissible evidence.
Even if the evidence was admissible, however, it is not evidence of retaliation.  The Tenth Circuit "has a very high bar for what constitutes direct evidence of retaliation: it does not require any inference of presumption."  *E.E.O.C. v. Picture People, Inc*., 684 F.3d 981, 991 (10th Cir. 2012).  "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and thus, does not constitute direct evidence."  *Hall v. U.S. Dep't of Labor, Admin. Review Bd*., 476 F.3d 847, 855 (10th Cir. 2007) (citation omitted). *See also Gorny v. Salazar*, 413 F. App'x 103, 107-08 (10th Cir. 2011) (affirming summary judgment and finding that a supervisor's statement that, "when this is all over, [plaintiff] is going to be gone" was not direct evidence of retaliatory intent).  In this case, the Court would have to infer discriminatory animus.  Kilgore does not state that Defendant is terminating Plaintiff because of her complaints about Beesting.  Kilgore simply states that Defendant terminated Beesting because of Plaintiff.  He then states that Defendant is terminating Plaintiff.  Both statements accurately reflect the terminations.  Thus, even if the statement was admissible, which it is not, it could be interpreted benignly.  Finally, even if this evidence could support a prima facie case of retaliation, Plaintiff fails to present any evidence of pretext.

Plaintiff's pretext contentions above in the context of her discriminatory termination claim.[40] Because Plaintiff fails to present any evidence that would raise a question of fact as to whether Defendant's stated reason for termination is pretext for retaliation, the Court grants Defendant summary judgment on this claim.[41]

### D. Plaintiff's Harassment Claim

In Plaintiff's response to Defendant's Motion for Summary Judgment, she alleges for the first time that her managers harassed her at work and at home. Plaintiff did not include a claim of harassment in her charge of discrimination with the KHRC. The Court lacks subject matter jurisdiction over Title VII claims that are not part of a discrimination charge.[42] Nor did Plaintiff include this claim or allegation in the Pretrial Order. "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment."[43] Thus, the Court will not consider Plaintiff's harassment claim.

**IT IS ACCORDINGLY ORDERED** this 27th day of March, 2013, that Defendant's Motion for Summary Judgment (Doc. 98) is hereby **GRANTED**.

**IT IS SO ORDERED**.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[40] *See* Section B(2)(a)-(b).

[41] Plaintiff asserts that Defendant itself found that Beesting retaliated against Plaintiff. Plaintiff, however, again does not rely on admissible evidence for this proposition. Furthermore, the evidence does not support her contention. The document she relies upon states that *employees viewed Beesting's actions* as retaliation. *See* Doc. 109-50.

[42] *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1101 (10th Cir. 2011).

[43] *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991).